## SETTLEMENT AGREEMENT AND RELEASE

Qualitypro Pest & Wildlife Services Inc., and James Horton (collectively "Defendants") and Matthew De Fabio, ("De Fabio"), desire to avoid the costs, risks, and delays associated with litigation and therefore agree as follows:

1. **Definition of Parties**.

    a. "Plaintiff" shall be defined to include, but is not limited to, Matthew De Fabio, and all affiliated persons or entities, including, but not limited to, his present or former domestic partner, spouse, dependents, heirs, assigns, successors, creditors, debtors, counsel and any otherwise affiliated or related persons and entities. If an obligation or right is that of Mr. De Fabio personally, he will be referred to as "Mr. De Fabio."

    b. Plaintiff De Fabio was employed by Defendant Qualitypro Pest & Wildlife Services Inc. for about two years ending on or about September 27, 2015.

    c. "Defendants" shall be defined as Qualitypro Pest & Wildlife Services Inc., and any of its affiliates, parent organizations, subsidiaries, directors, managers, employees, agents, representatives, former employees, predecessors, successors and assigns, and James Horton, and any of his agents, representatives, descendants, dependents, heirs, executors, administrators, and assigns.

    d. "Action" or "Lawsuit" refers to the lawsuit filed by Plaintiff against Defendants on December 3, 2015, in the United States District Court, Southern District of New York, with Civil Action #: 15-CV-09483 (KMK)(LMS).

2. **Consideration**. In consideration for Mr. De Fabio's signing this Agreement and the releases of all claims herein, Defendants Qualitypro Pest & Wildlife Services Inc., and James Horton, agrees to make the following payments:

    a. A payment to "Matthew De Fabio" in the amount of Six Thousand Six Hundred and Sixty-Seven Dollars ($6,667), within fourteen (14) days of the defense counsel receiving a copy of this agreement executed by Plaintiff. Such payment shall be made as follows: one check made payable to Matthew De Fabio in the amount of Three Thousand Three Hundred Thirty-Three Dollars and Fifty Cents ($3,333.50) less applicable taxes and withholdings for which Defendants will issue an IRS form W-2 to Mr. De Fabio, and one check made payable to Matthew De Fabio in the amount of Three Thousand Three Hundred Thirty-Three Dollars and Fifty Cents ($3,333.50) representing liquidated and other damages for which Defendants will issue an IRS form 1099 to Mr. De Fabio; MD

    b. A check made payable to "Abdul Hassan Law Group, PLLC," in the amount of Three Thousand Three Hundred and Thirty-Three Dollars ($3,333), representing partial payment of a 1/3 contingency fee ($10,648) plus costs ($555) within fourteen (14) days of the defense counsel receiving a copy of this agreement executed by Plaintiff. Defendants will issue an IRS form 1099 to Mr. De Fabio and his counsel for the amount set forth in this subparagraph; MD

1

  c. Ten checks made payable to "Matthew De Fabio" each in the amount of One Thousand Four Hundred Sixty-Two and 90/100 Dollars ($1,462.90), totaling $14,629. These ten payments will be due at thirty-day intervals following the date when the first payment in paragraph 2(a) is due and shall be paid as follows: one check made payable to Matthew De Fabio in the amount of Seven Hundred Thirty-One Dollars and Forty Five Cents ($731.45) less applicable taxes and withholdings for which Defendants will issue an IRS form W-2 to Mr. De Fabio, and one check made payable to Matthew De Fabio in the amount of Seven Hundred Thirty-One Dollars and Forty Five Cents ($731.45) representing liquidated and other damages for which Defendants will issue an IRS form 1099 to Mr. De Fabio; *MD*

  d. Ten checks made payable "Abdul Hassan Law Group, PLLC," each in the amount of Seven Hundred Eighty-Seven and 10/100 Dollars ($787.10), totaling $7,871, representing partial payment of a 1/3 contingency fee ($10,648) plus costs ($555). These ten payments will be due at thirty-day intervals following the date when the first payment in paragraph 2(b) is due. Defendants will issue an IRS form 1099 to Mr. De Fabio and his counsel for the amount set forth in this subparagraph; *MD*

  e. If there is a default in making the payments herein, Plaintiff and his Counsel Abdul Hassan Law Group, PLLC ("AHLG") will give Defendants Qualitypro Pest & Wildlife Services Inc., and James Horton, written notice of said default, by sending a notice of default to Defendants' attorneys Mr. Howard Schragin, Esq. at **hschragin@sapirschragin.com**. Defendants will have seven (7) days from receipt of such notice to cure the default. If Defendants Qualitypro Pest & Wildlife Services Inc., and James Horton, do not cure the default within seven (7) days of the notice, Plaintiff and his Counsel shall have the right to enter a judgment against Defendants Qualitypro Pest & Wildlife Services Inc., and James Horton individually and/or jointly, in the amount of Fifty Thousand Dollars less any monies paid by Defendants, plus legal fees and costs incurred by Plaintiff and his counsel in connection with any such default by Defendants, and the Court shall retain and have authority and jurisdiction to enter such judgment in favor of Plaintiff and his counsel.

  f. The initial payments set forth in paragraphs 2.a and 2.b above shall be sent by overnight delivery to the office of Plaintiff's counsel Abdul K. Hassan, Esq., located at 215-28 Hillside Avenue, Queens Village, NY 11427.. The subsequent payments set forth in paragraphs 2.c and 2.d above shall be sent by first class mail to the office of Plaintiff's counsel Abdul Hassan Law Group, PLLC, located at 215-28 Hillside Avenue, Queens Village, NY 11427.

  g. Defendants knowingly and voluntarily release and forever discharge Plaintiff of and from any and all claims, against Plaintiff as of the date of execution of this Agreement.

  h. Defendants shall send the payments as set forth above to Plaintiff's counsel who will hold such payments in escrow and distribute them only upon the Court's approval of this settlement agreement.

2

     i.  Plaintiff shall provide Defendants, through counsel, with an IRS Form W-4 before any payment is due under this Agreement. If no such W-4 is provided to Defendants, Defendants shall use the latest W-4 provided by Plaintiff to Defendants, which are in Defendants' possession.

     j.  Plaintiff shall be solely responsible for any taxes resulting from payments received under the Agreement, and in the event of an audit of Defendants by any taxing authority regarding payments to Plaintiff in this Agreement, Plaintiff shall indemnify and hold each of the Defendants harmless to the fullest extent permitted by law, including the payment of any damages, penalties, interest, attorneys' fees and/or judgments that may be incurred by Defendants resulting from payments under this Agreement.

   3. **No Consideration Absent Execution of This Agreement**. Plaintiff understands and agrees he would not receive the monies and/or benefits specified in Paragraph 2 above, except for his execution of this Agreement and the discontinuance of the Action with prejudice.

   4. **Release of Claims by Plaintiff**. In return for the payments identified in paragraph 2, Plaintiff knowingly and voluntarily releases and forever discharge Defendants of and from any and all claims asserted in this action, consistent with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), as of the date of execution of this Agreement.

   5. **Acknowledgments and Affirmations**.

     a.  Plaintiff affirms that in the Action he has asserted a claim in seeking unpaid wage or overtime pay under the Fair Labor Standards Act, the New York State Labor Law, and/or any other law, regulation or basis and affirms that there is a bona fide dispute as to such FLSA claims which are being settled and released by this Agreement.

     b.  Plaintiff affirms that, as of the date of execution hereof, he has not contacted any governmental agency with jurisdiction over wage and hour laws regarding any potential or alleged violations of Defendants encompassing the claims alleged in the Lawsuit for the period of time covered by this Lawsuit.

     c.  Plaintiff understands and agrees that the Settlement Amount (described in Paragraph "2" above) is in full satisfaction of any and all obligations Defendants may have with respect to Plaintiff's claims for alleged unpaid wages, liquidated damages, interest and attorneys' fees under the wage and hour provisions of the New York State Labor Law, the Fair Labor Standards Act, and/or any other applicable wage hour and wage payment laws, rules or regulations for anything that has occurred up to the date Plaintiff executes this Settlement Agreement.

   6. **Governing Law and Interpretation**. This Agreement shall be governed and conformed in accordance with the laws of the State of New York without regard to its conflict or choice of law provisions. In the event the Plaintiff or Defendants breaches any provision of this

3

Agreement, Plaintiff and Defendants affirm that either may institute an action to specifically enforce any term or terms of this Agreement. If any provision of this Agreement is declared illegal or unenforceable by any court of competent jurisdiction, the parties agree the court shall have the authority to modify, alter or change the provision(s) in question to make the Agreement legal and enforceable. If this Agreement cannot be modified to be enforceable, excluding the release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. If the release language is found to be illegal or unenforceable, Plaintiff and Defendants agree to execute a binding replacement release(s).

7. **Amendment**. Except as provided in Paragraph 6 above, this Agreement may not be modified, altered or changed without the express written consent of both parties wherein specific reference is made to this Agreement.

8. **Resolution of Disputes**. The parties agree that the Court in this action shall retain jurisdiction to resolve any disputes arising out of this Settlement Agreement and the settlement of this action.

9. **Non-admission of Wrongdoing**. The parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by either party of any liability or unlawful conduct of any kind.

10. **Dismissal of the Lawsuit**. Plaintiff shall file a Stipulation of Dismissal with Prejudice with the Court in this action once the Agreement has been approved by the Court. In the event that additional documentation is needed to terminate the Lawsuit as against Defendants, Plaintiff shall execute and submit all documents required to terminate such proceedings.

11. **Entire Agreement**. This Agreement sets forth the entire agreement between the parties hereto, and fully supersedes any prior agreements or understandings between the parties. Plaintiff acknowledges he has not relied on any representations, promises, or agreements of any kind made to him in connection with his decision to accept this Agreement, except for those set forth in this Agreement, and Plaintiff's consent to this Agreement is given freely, voluntarily, and with full knowledge and understanding of this Agreements contents.

12. **Section Headings**. Section headings are used herein for convenience of reference only and shall not affect the meaning of any provision of this Agreement.

13. **Legal Fees**. Except as provided for in this Agreement, each party will be responsible for its own legal fees or costs, if any, incurred in connection with the negotiation, settlement and delivery of this Agreement.

14. **Joint Participation in Preparation of Agreement**. The Parties participated jointly in the negotiation and preparation of this Agreement, and each party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any party or

4

in favor of any party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

15. **Competency to Waive Claims**. At the time of considering or executing this Agreement, Mr. De Fabio was not affected or impaired by illness, use of alcohol, drugs or other substances or otherwise impaired. Mr. De Fabio is competent to execute this Agreement and knowingly and voluntarily waives any and all claims defined herein he may have against Defendants.

HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS ABOVE, PLAINTIFF FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE CLAIMS AS SET FORTH ABOVE.

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Agreement and Release as of the date set forth below:

**PLAINTIFF:**

**MATTHEW DE FABIO**

By: _Matthew Ditali_

Date: _1-24-17_

**DEFENDANT:**

**QUALITYPRO PEST & WILDLIFE SERVICES INC.**

By: _[signature]_

Print Name _James Horton_

Title _President_

Date: _1-22-17_

**DEFENDANT:**

**JAMES HORTON**

By: _[signature]_

Title _____

Date: _1-22-17_

5